

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Claude Isabell
Secretary of State
Austin, Texas

Attention:  J. L. McGarity

Dear Sir:

Opinion No. O-7212

Re:  Whether the proposed charter of
the "Waco Rifle and Pistol Club"
is within the purview of Sections
2, 9 or 105 of Article 1302,
V.A.C.S., and related questions.

We have received your letter dated April 6, 1946, which
is quoted as follows:

"On March 13th, we received an incomplete, un-
executed and unacknowledged proposed charter for
'Waco Rifle and Pistol Club' from the attorneys men-
tioned below. These attorneys sought to incorporate
this club under the provisions of Section 2 or Section
105 of Article 1302 of Vernon's Annotated Revised Civil
Statutes.

"On March 16th, we advised these attorneys that the
proposed name of the club was not available, inasmuch
as an examination of our files reflected that we had al-
ready filed a charter for a club with the name 'Waco
Rifle Club'. This charter was filed on June 26, 1917,
at which time a filing fee in the sum of $10.00 was col-
lected for the use and benefit of the State by this
office. We are, however, of the opinion that this fee
was assessed in error and that a filing fee in the sum
of $50.00 should have been collected by this office in
connection with such filing. We are of the opinion that
such a club should be subject to a minimum annual fran-
chise tax, at that time in the sum of $10.00 and under
the present statutes, in the sum of $20.00. We so ad-
vised these attorneys on March 16th.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Claude Isbell - Page 2

"On March 18th, these attorneys further advised us that they were of the opinion that such a club could be organized under the provisions of Section 105 of Article 1302 of Vernon's Annotated Texas Revised Civil Statutes.

"We hand you herewith a photostatic copy of this proposed incomplete, unexecuted and unacknowledged charter and respectfully ask you for your opinion as to the following:

"First:    Whether or not the proposed charter should be filed by this office under any Section of Article 1302 of the Texas Revised Civil Statutes.

"Second:   In the event that such proposed charter if completed and properly executed and acknowledged, should be filed by this office, please advise what the proper filing fee should be and if the said club would be subject to an annual franchise tax."

Before the proposed charter can be properly considered for filing by the Secretary of State, it must first meet the statutory requirements pertaining to form. It is necessary that the charter contain all specific items as set out in Articles 1304 and 1312, V.A.C.S., and it must be properly subscribed and acknowledged pursuant to the provisions of Article 1305, V.A.C.S. Upon satisfying the statutory provisions relating to form, the charter may then be viewed from the standpoint of compliance with substantive laws.

A corporate name is essential to the existence of a corporation as it is made so by statute. There is no general statute in Texas preventing a corporation from taking any name that it may select, although by Article 4700, V.A.C.S., insurance companies are prohibited from selecting a name similar to that of another existing insurance company so as to mislead the public. At common law, however, corporations generally were prohibited from selecting a name similar to that of an existing corporation so as to deceive the public and this rule of law now prevails in Texas. Such a similarity of names tends to create confusion with respect to such corporate activities as contractual negotiations, mail distribution, and many others too numerous to mention here. It is the duty of the Secretary of State to inquire into a similarity of corporate names and reject the proposed charter of a new corporation when it offers the adoption

Hon. Claude Isbell - Page 3

of a name which so nearly resembles that of an already existing corporation as to be misleading. Names for corporations are of an unlimited source and we believe it to be no hardship upon the incorporators here who propose the name "Waco Rifle and Pistol Club" to select a name substantially different from that of the already existing corporation; namely, "Waco Rifle Club." For a further discussion of similarity of corporate names, see 14 C. J. 310 and Hildebrand on Texas Corporations, Vol. 1, § 29, p. 128.

The incorporators here have stated the purpose of their proposed corporation in Article Two of the charter to be as follows:

"This association is formed for the purpose of educating citizens of the United States resident in our community in the art of the safe handling and use of firearms."

To authorize the foregoing purpose, the incorporators have suggested either subdivisions 2 or 105 of Article 1302, V.A.C.S., which we quote as follows:

"2. The support of any benevolent, charitable, educational or missionary undertaking.

"105. Corporations may be created for one or more of the following purposes, namely: Religious, Charitable, Literary, Scientific or Educational. Acts 1945, 49th Leg., p. 119, ch. 81 § 1."

In 1945, the 49th Legislature added subdivision 105 to Article 1302 and by doing so simply authorized any one or combination of purposes already listed in subdivisions 1 and 2 of the Article (See opinion of this office addressed to you numbered O-6843 and dated November 5, 1945). A selection of one of these two subdivisions is immaterial here as the provisions of both overlap and our problem is to determine generally whether the term educational as used in each can be reconciled with the purpose as stated in the charter.

The charter must specify the purpose for which the corporation is to be created with sufficient clearness to enable the Secretary of State to see that the purpose listed is one provided for by the statute. In determining this, the Secretary of State is not restricted to the literal wording of the purpose clause in the charter which adopts the very words of the statute, but he may consider all features of the charter and circumstances surrounding the proposed incorporation to decide whether the primary object of the corporation is within the statutory purposes suggested here, i. e., educational.

Hon. Claude Isbell - Page 4

In the case of Hazen v. National Rifle Ass'n of America, 101 Fed. 2d 432, the United States Court of Appeals (D.C.) had before it a corporate charter listing its purposes as (1) educating the youth of the nation in marksmanship, (2) improving marksmanship of members and (3) encouraging marksmanship throughout the country. The Court, in holding that the personalty of such corporation was not exempt from the taxation statute, stated that although these activities might be in some small measure educational, not one of the objects was necessarily or exclusively educational in character. In the case of Vredenburg v. Behan, 33 La. Ann. 627, the Court held that a rifle club organized under a statute providing for the creation of corporations for "literary, scientific and charitable purposes" was not properly organized within said statute. In the case of State v. Business Men's Athletic Club, 163 S.W. 901, the Court of Appeals of Missouri held that a corporation organized to provide its members with entertainment and exhibitions of agility and activity such as boxing, basketball and other sports, was not organized for educational purposes. To the same effect, see Mohawk Mills Assn. v. Miller, 22 N.Y.S. 2nd 993.

It appears that the association here is to be formed for the benefit and advantages of its members as a club so that they may enjoy, exhibit and become adept in the art of rifle and pistol shooting. In carrying on this objective, education is but an incidental feature. It is not the exclusive or principal object of the association. If rifle and pistol shooting were primarily educational, then the term could, with equal propriety, be extended to include nearly everything pertaining to the occupations, endeavors, experiences and pleasures of man, as these are to some extent educational in nature. We believe the Legislature, by authorizing educational purposes for corporations, intended those corporations to be engaged in something more than incidental education, i. e., a corporation must have for its primary purpose the giving of instructions in some recognized field of knowledge. Consequently, it is our opinion that the purpose of the association here does not come within the meaning of the term educational as used in subdivisions 2 and 105 of Article 1302, V.A.C.S.

It is our further opinion that the purpose of this corporation does come within the provisions of and is authorized by subdivision 9 of Article 1302, which we quote as follows:

"To support and maintain bicycle clubs, and other innocent sports. Acts 1897, p. 189; G.L. vol. 10, p. 1243."

This department has frequently construed the above subdivision and the term "innocent sports" has been defined at length in our opinion numbered O-2866 addressed to the Secretary of State and dated

Hon. Claude Isbell - Page 5


November 15, 1940, to which you may refer. A typical example of "sport" and one almost always listed by the authorities is "hunting". We believe lawful pistol and rifle shooting to be closely allied with "hunting", and without further elaboration on the matter it is our opinion that the art and sport of "Rifle and Pistol shooting" exercised lawfully and as named in the charter clearly comes within the term "innocent sports" as specified in subdivision 9 of Article 1302, V.A.C.S.

Article 3914, V.A.C.S., establishes the fees to be charged by the Secretary of State upon the filing of a charter, the pertinent parts of which we quote below:

"Upon filing each charter, amendment or supplement thereto of a corporation for the support of public worship, any benevolent, charitable, educational, missionary, literary or scientific undertaking, the maintenance of a library, the promotion of a public cemetery not for profit and the encouragement of agriculture and horticulture, to aid its members in producing and marketing agricultural products, or for acquiring, raising, breeding, fattening or marketing live stock, a filing fee of Ten ($10.00) Dollars, and for filing the semi-annual financial statement of such agricultural products or live stock corporation, Ten ($10.00) Dollars, which shall include the annual license fee.

"Upon filing each charter, amendment or supplement thereto, of a private corporation created for any other purpose intended for mutual profit or benefit, a filing fee of Fifty ($50.00) Dollars. . ." (Emphasis added)

As we have held that the proposed association here is not for the support of an educational undertaking, it follows that said association falls within the statutory language reading "private corporation created for any other purpose intended for mutual. . benefit" and that consequently the $50.00 filing fee is applicable and due.

Article 7084, V.A.C.S., authorizes the franchise tax for every domestic and foreign corporation chartered or authorized to do business in Texas. We quote below only that part of the statute which we believe applicable to the facts here:

".....provided, that such tax shall not be less than Twenty Dollars ($20) in the case of any corporation, including those without capital stock, and provided further that the tax shall in no case be computed on a sum less than the assessed value, for State ad valorem tax purposes, of the property owned by the corporation in this State." (Emphasis added).

Hon. Claude Isbell - Page 6

Pursuant to the wording of the foregoing statute, it is our opinion that the minimum Twenty Dollar ($20) annual franchise tax should be assessed against the corporation proposed here.

Article 7094, V.A.C.S., lists the types of corporations exempt from payment of the franchise tax and is quoted as follows:

"The franchise tax imposed by this chapter shall not apply to any insurance company, surety, guaranty or fidelity company, or any transportation company, or any sleeping, palace car and dining car company which is now required to pay an annual tax measured by their gross receipts, or to corporations having no capital stock and organized for the exclusive purpose of promoting the public interest of any city or town, or to corporations organized for the purpose of religious worship, or for providing places of burial not for private profit, or corporations organized for the purpose of holding agricultural fairs and encouraging agricultural pursuits, or for strictly educational purposes, or for purely public charity." (Emphasis added).

The charter reveals that the association has no capital stock; but is it one organized for the exclusive purpose of promoting the public interest? We think not. The Supreme Court of Oklahoma in the case of State v. Crockett, 206 p. 816, defines "public interest" thus:

"Public interest means more than a mere curiousity; it means something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected."

All statutory exemptions from taxation are strictly construed and one claiming an exemption must bring himself clearly within the statutory exemption. McCollum v. Associated Retail Credit Men of Austin, 41 S.W. 2d 45. The association here is purely a private concern, created for the advancement of a private end and whose object is to promote private interests. It is to be formed for the benefit and advantages of its members and the franchise conferred is to be exercised in their behalf. Consequently, it is our opinion that it is not a corporation organized to promote public interest and therefore does not come within the foregoing provisions of the exemption statute.

To recapitulate, and specifically answering your two questions in the order asked, it is our opinion that the proposed charter here under consideration may be properly filed under Section 9 of Article 1302, V.A.C.S., when it is validly subscribed, acknowledged

Hon. Claude Isbell - Page 7

and completed; that the proper filing fee to be charged is Fifty ($50.00) Dollars and that the corporation is subject to an annual franchise tax as required by law.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Jack K. Ayer
Jack K. Ayer
Assistant

APPROVED MAY 1, 1946

ATTORNEY GENERAL OF TEXAS

JKA:djm

